5 A.3d 750

**George John BERESKA, Jr.**

v.

**STATE of Maryland.**

**No. 742, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 17, 2010.

666

Byron L. Warnken (Michael P. Lytle, Warnken, LLC, on the brief) Towson, MD, for Appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for Appellee.

Panel: JAMES R. EYLER, WOODWARD, IRMA S. RAKER (Retired, specially assigned), JJ.

RAKER, J.

This case is an appeal from the denial of appellant's "Motion to Revise Judgment based on Mistake or Irregularity, or in the Alternative, Petition for Writ of Error Coram Nobis," filed in the Circuit Court for Calvert County on January 22, 2009. Appellant raises a single issue for our review, which he articulates as follows:

> "Whether the Maryland General Assembly violated the Ex Post facto Clauses of the Maryland and United States Constitutions when it enacted a sentencing law, and applied it retroactively to conduct committed prior to enactment, with the new, more onerous law, prohibiting probation before judgment, whereas the former law authorized probation before judgment?"

After briefing, oral argument, and supplemental briefing, we perceive that this case can be resolved by answering a single dispositive question:

"Did the Circuit Court for Calvert County have any authority or jurisdiction on August 9, 2004 to permit appellant to withdraw his guilty plea entered on March 14, 1996, and then to permit him to enter a guilty plea to a reduced charge?"

## Procedural Background

Appellant George John Bereska, Jr. entered a guilty plea in the Circuit Court for Calvert County on March 14, 1996, to the offense of third-degree sexual assault, based on his conduct in June and July of 1995. The court sentenced appellant to six years of incarceration with all but thirty days suspended, and five years of supervised probation. In October, 1995, the General Assembly amended Md.Code, Article 27 (1974, 1995 Cum. Supp.), § 641,[1] precluding the grant of probation before judgment (hereinafter "PBJ") for the offense of third-degree sexual assault. Appellant nonetheless filed a timely motion to modify his sentence, requesting PBJ pursuant to Art. 27, § 641. The circuit court held this matter *sub curia* until 2004, by which time appellant had completed serving his term of incarceration and probationary period.

Pursuant to an agreement between appellant and the State, on August 9, 2004, the circuit court permitted appellant to withdraw his guilty plea, permitted the State to amend the charging document and permitted appellant to enter a guilty plea to the offense of child abuse, in violation of Art. 27, § 35C, a lesser offense for which PBJ remains available. The State had all along opposed PBJ, but agreed now not to

---

1. Article 27, § 641 has since been repealed and recodified as Md.Code (2001, 2006 Cum. Supp.), Crim. Proc. Art., § 6–220. Unless otherwise noted, all subsequent statutory references herein shall be to Article 27 of the Maryland Code (1974, 1995 Cum. Supp.), which was the edition of the Code in effect at the time of appellant's criminal acts.

oppose PBJ so long as appellant waived the right to seek expungement of the court record, and appellant did so.

On November 30, 2007, appellant filed a motion "[t]o revise judgment based on fraud, mistake or irregularity, or in the alternative, petition for writ of error coram nobis." Appellant argued that the 1995 statutory amendment, effective October 1, 1995, eliminating the possibility of PBJ for third-degree sexual offenses violated his rights under the Ex Post Facto Clause of the United States Constitution,[2] and the parallel clause in the Maryland Declaration of Rights.[3] His coram nobis petition was based on the argument that he had received ineffective assistance of counsel, in that his attorney failed to recognize this ex post facto issue at the 2004 hearing. The court denied appellant's motion. Appellant was allowed to file a substantially similar motion in 2009, and the court again denied the motion.

Before this Court, appellant argues that the ex post facto law doctrine precludes any retroactive effect of the revised Art. 27, § 641, and that the expungement waiver in the new plea agreement was invalid, because the plea to a lesser count was not necessary to obtain PBJ under the ex post facto clauses of the Maryland and federal constitutions. Ultimately, what appellant sought in this appeal is a restored right to seek expungement of his court record relating to his 1995 conduct.

---

2. That Clause provides that "[n]o bill of attainder or ex post facto law shall be passed." U.S. CONST., Art. I, § 9. The Supreme Court has summarized the Ex Post Facto law doctrine in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), as follows:

 "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."

 *Id.* at 29, 101 S.Ct. at 964.

3. MD. DECLARATION OF RIGHTS, art. 17. The Court of Appeals has explained that "[t]he Ex Post Facto Clauses of the United States Constitution and Maryland Declaration of Rights have been viewed generally to have the 'same meaning' and are thus to be construed *in pari materia.*" *Khalifa v. State*, 382 Md. 400, 425, 855 A.2d 1175, 1189 (2004).

Following briefing and oral argument, this Court ordered the parties to file supplemental briefs addressing the question of the circuit court's jurisdiction, in 2004, to allow appellant to withdraw his original 1996 guilty plea and enter a new plea to a different offense.

In response to the Court's request to brief the jurisdictional basis for the circuit court's actions, appellant states that the circuit court had no jurisdiction to permit appellant to withdraw his 1996 guilty plea because the motion to withdraw the plea was untimely and there were no grounds advanced that would have supported withdrawal of the plea. He prays that this Court rule that applying the PBJ prohibition to appellant's sexual offense conviction would violate the Ex Post Facto Clause of the Maryland and United States constitutions, and "remand the case to the circuit court with instructions to enter a probation before judgment without the condition that Mr. Bereska waive his right to expungement of the charges."

We shall hold that the Circuit Court for Calvert County lacked the jurisdiction to vacate the guilty plea and judgment of conviction entered on March 14, 1996, and that appellant's ex post facto argument is not before the Court at this time.

## Facts

On December 5, 1995, appellant George John Bereska, Jr. was indicted by the Grand Jury for Calvert County for second-degree sexual assault in violation of Art. 27, § 464A, in connection with his conduct with a twelve year-old boy in June and July of 1995. On March 14, 1996, appellant pled guilty in the Circuit Court for Calvert County to a third-degree sexual offense under Art. 27, § 464B. At his May 17 sentencing hearing, the court sentenced appellant to a term of incarceration of six years, with all but thirty days suspended, and five years of supervised probation.

At the time appellant committed the criminal acts underlying his guilty plea, PBJ was available for a third-degree sexual offense, under Art. 27, § 641. Effective October 1, 1995, however, the General Assembly amended the Maryland Code

to eliminate the possibility of PBJ for third-degree sexual offenses.[4] This change went unnoticed by appellant, the circuit court, and the assistant State's attorney at the May, 1996 sentencing.

On August 14, 1996, appellant filed a motion under Rule 4–345, seeking modification or reduction of sentence. Among other requests, appellant's August, 1996 motion for modification sought PBJ. The court declined to grant PBJ at that time, but agreed to hold appellant's motion *sub curia.* In November of 1998, having completed 1,000 hours of community service, appellant requested a hearing on his motion for modification. The court declined to grant a hearing, but indicated that it might consider PBJ when appellant completed his five years of probation.

In 2001, appellant completed his term of probation,[5] and on May 21, 2002, he requested a hearing on his motion for modification, held *sub curia* in the circuit court. The State filed a memorandum in opposition to appellant's request for PBJ.

The State's 2002 opposition memorandum raised for the first time the issue that PBJ, now governed by Md.Code (2001, 2006 Cum. Supp.), Crim. Proc. Art., § 6–220, was unavailable for the charge to which appellant had pled guilty in 1996, third-degree sexual assault. At the time, defense counsel conceded this point. The court agreed that PBJ was unavailable in cases of third-degree sexual assault. All parties

---

**4.** 1995 Laws of Md., ch. 144. Beginning on October 1, 1995, pursuant to Art. 27, § 641(a)(4), PBJ was no longer available for sexual offenses in violation of Md.Code, Art. 27, § 464B, and involving a person under the age of sixteen.

**5.** Neither appellant nor the State attempt to identify precisely when appellant's original sentence was completed. On May 17, 1996, appellant was sentenced to a term of incarceration of six years with all but thirty days suspended, and five years of supervised probation. We need not resolve the question whether his sentence lapsed for purposes of this appeal five years later, on May 17, 2001, when the probationary period ran out, or six years later, on May 17, 2002, when the suspended six year sentence would have run out. In either case, it had been completed prior to the August 9, 2004 hearing.

involved were in agreement that PBJ could not be applied to appellant's third-degree sexual assault conviction. In 2002, no one raised the notion that applying the revised statute to appellant might create ex post facto issues.

Appellant and the State apparently reached an agreement that appellant should have the benefit of PBJ, and they contrived a plan involving the withdrawal of the 1996 guilty plea and the entry of a guilty plea to an amended, lesser charge, which they believed would avoid the 1995 change in the law and allow appellant the benefit of PBJ. In exchange for agreeing to this plea revision, the State required that appellant agree not to seek expungement of the court record.

On August 9, 2004, the circuit court held a hearing and permitted appellant to withdraw his March 14, 1996 guilty plea to third-degree sexual assault, and to enter a new plea to child abuse. The court granted PBJ and, pursuant to the agreement of the parties, ordered that appellant not seek expungement of his criminal record as provided under Md.Code, Crim. Proc. Art. (2001, 2006 Cum. Supp.), § 10–105, Expungement of record after charge is filed. The following significant discussion took place in the courtroom:

> [DEFENSE COUNSEL]: Mr. Bereska, as you are aware, you were before His Honor on March 14th of 1996, at which time you entered a plea of guilty to the crime of sexual offense in the third degree.... We have had numerous conversations regarding this matter, and before we accept your plea to the new crime of sexual abuse of a minor, you have to withdraw your plea as entered on March 14th of 1996 to third degree sexual offense. Would you like to do that at this time?
>
> [APPELLANT]: Yes.
>
> * * *
>
> [COURT]: I just want to ask Mr. Bereska one question, and that is, your attorney asked if there had been any promises or threats made to your to do any of these things. I am assuming that you are setting aside or not including with that negative answer ... the plea discussions that your

attorney and [the Prosecutor] have had and that I have had. So those discussions are promises to some extent, but when he asked if you if there were any promises made, I assume your reference to "no" meant any additional promises other than what has been put forth in front of us today. Is that correct?

[APPELLANT]: That's correct, Your Honor.

[COURT]: Okay. The Court will accept the withdrawal of the plea that was entered on March 14th, 1996. At that time, the plea was amended to count one, which is a third degree sexual offense.

\* \* \*

[DEFENSE COUNSEL]: So at this point, Your Honor, I would make a motion to amend count one to child abuse under Article 27, Section 35C. [Defense counsel then advised appellant that he was waiving his right to a jury trial by pleading guilty to child abuse.]

\* \* \*

[DEFENSE COUNSEL]: [Y]ou are entering this plea freely, voluntarily, and of your own free will?

[APPELLANT]: Yes, I am.

[DEFENSE COUNSEL]: Your Honor?

[COURT]: [Prosecutor], is the State satisfied?

[PROSECUTOR]: Yes, Your Honor.

[COURT]: The Court is familiar with the facts of the situation and does not need to review those again, nor have the State read those into the record. The Court is therefore satisfied that this plea is—that there is sufficient factual basis for the plea and that this plea is given knowingly, intelligently, and voluntarily, and understandingly, and the Court will accept the plea of guilty to third degree sexual offense or fourth—

[PROSECUTOR]: Child abuse, Your Honor.

[COURT]: Excuse me, child abuse, under Article 27, Section—

[PROSECUTOR]: 35C.

[COURT]: 35C.

[DEFENSE COUNSEL]: Your Honor, with the understanding that the Court has accepted Mr. Bereska's plea, I would at this time in light of the voluminous amount of material that has transpired back and forth between the Court and the State ask that the Court afford Mr. Bereska the benefit of probation before judgment pursuant to now Section 6–220 of the Criminal Procedure Article of the Annotated Code of Maryland. Mr. Bereska, you have the right of allocution, which means that you can address the Court before he imposes a sentence. Would you like to do so?

[APPELLANT]: Yes, I would. Quite simply, Your Honor, I would just like to thank the Court and the State for giving me this opportunity. I sincerely mean that.

[COURT]: Okay. Do you understand that you give up the right to an automatic appeal in this matter . . . .

[APPELLANT]: Yes, I do, Your Honor.

[COURT]: Alright. Let me just ask the State if it has anything to present in terms of the victims or anything like that?

[PROSECUTOR]: No, Your Honor, I do not. As you are aware we did contact the victims, for the record we did contact the victims and his parents. At first they were objecting to this. Then I received a letter from private counsel regarding a civil suit, and they were withdrawing their objection to the entry of a probation before judgment. Therefore, as I told [defense counsel], the State would be deferring to the Court on that decision.

[COURT]: Okay. Well, Mr. Bereska, I know this has been a very difficult eight or nine, ten years, whatever it's been. Certainly the Court has been provided with a lot of information about you, not only by your counsel, but also by the doctor who did the independent evaluation for us, Dr. Weiner. The safeguards that have been built into this agreement are the not seeking expungement, so that record will always be there. It will not show a conviction, but it

will show that there was the—this matter did come up and there was a plea to this, to this count as set forth by counsel today.

I hope you can not put me in a position where I come back and wonder if I did the right thing. I am confident today that you won't, but it's something you have to deal with every day and make sure it doesn't happen.

So the Court is going to sign the Order that counsel has submitted this 9th day of August. . . .

[DEFENSE COUNSEL]: And, Mr. Bereska, let me just advise you very briefly. You have ten days to file a motion for a new trial and ninety days to ask the Court to modify your sentence. However, in light of the Order that has been signed, there is in essence very little, if anything, to modify. As the Court has indicated, it has been a very long road for you, and we all wish you the very, very best.

In August, 2004, it appeared that this matter was finally concluded.

On November 30, 2007, over three years later, with different counsel retained, appellant filed a motion "to revise judgment based on fraud, mistake, or irregularity, or in the alternative, petition for writ of error coram nobis." Appellant asserted also that "[t]he real question in this case is the appropriate procedural vehicle to secure for Mr. Bereska the relief to which he is entitled."

Appellant alleged in his 2007 motion that his 1996 guilty plea was affected by mistake or irregularity under Rules 4–331(b) and 4–345(b) because no one noticed the ex post facto issue at the 2004 hearing. He argued that the 1995 statutory amendment eliminating the possibility of PBJ for third-degree sexual offenses, which took effect on October 1, 1995, had violated his rights under the Ex Post Facto clauses of the federal Constitution and the Maryland Declaration of Rights. Appellant's reasoning was that the circuit court had indicated its willingness to consider PBJ all along; that the elimination of PBJ as a possibility for appellant's third-degree sexual offense could not have been applied to him under the Ex Post

Facto Clause; and that therefore, his waiver of his right to seek expungement in exchange for the plea to a charge for which PBJ remains available, child abuse, likewise violated the Ex Post Facto Clause. In other words, if PBJ was available to appellant despite the statutory change, the State could not properly extract a concession from appellant (the "no expungement" condition), in return for agreeing not to oppose a new plea which was not necessary in order to make PBJ possible.

From this argument rooted in the ex post facto law doctrine, appellant concluded that because no one noticed the ex post facto issue at the 2004 hearing, "the [2004] plea was entered into as a result of mistake or irregularity on the part of the State, the defense, and the Court." In his 2009 motion he stated as follows:

> "Three things occurred—withdrawal of the guilty plea, entry of a second guilty plea to a different crime, and waiver of the right to seek expungement—all because of a mistake or [ir]regularity when the State, the Court, and defense counsel all failed to properly apply the Ex Post Facto Clauses of the federal and state constitutions. This occurred because they all failed to appreciate that the 'no PBJ' provision could not be constitutionally applied to Mr. Bereska.
>
> \* \* \*
>
> This Court should exercise jurisdiction should, because of the mistake and irregularity, and sign an Order, permitting Mr. Bereska to seek expungement."

Appellant's fraud and mistake theories were argued more fully in his initial, 2007 motion. He argued as follows:

> "Unlike in *Minger* [*v. State,* 157 Md.App. 157, 849 A.2d 1058 (2004)], in which the court exercised jurisdiction when it had no jurisdiction, in Mr. Bereska's case, the Court believed it had no jurisdiction when it did have jurisdiction. The Court mistakenly believed that it lacked jurisdiction to grant a PBJ under Mr. Bereska's original plea, causing him to withdraw his original plea and enter into a more restric-

tive plea. A mistake occurred within the meaning of Md. Rules 4–331(b) and 4–345(b), and this Court has the power to correct the mistake by correcting its judgment.

Alternatively, the withdrawal of Mr. Bereska's original plea and entry of a new, more restrictive plea, based on mutual mistake, constituted an irregularity within the meaning of Md. Rules 4–331(b) and 4–345(b).

\* \* \*

In this case, the Court, the State, and the defense 'ought not' to have required Mr. Bereska to withdraw his original plea and enter a more restrictive plea in order to make Mr. Bereska eligible for a PBJ, when, in fact, Mr. Bereska was already eligible for PBJ *and* already had the right to seek expungement under the original plea agreement."

The alternative coram nobis portion of appellant's 2007 and 2009 motions were based on the argument that appellant had received ineffective assistance of counsel, in that defense counsel had failed to recognize, and press, the ex post facto argument detailed above in advance of the August, 2004 hearing. This ineffective assistance, appellant argued, resulted in the loss of his right to seek expungement of his court record.

The circuit court denied appellant's initial motion on March 12, 2008. In its Order, the circuit court found as follows:

"[T]hat it was the legislature's clear intent that the statute at issue, Maryland Annotated Code, Criminal Procedure Article § 6–220(d)(3), be applied to any defendant not yet convicted at the time the statute became effective. Thus, this court finds that the statute was appropriately applied to the defendant, and therefore, there was no mistake as to law or fact regarding the defendant's sentence. . . ."

Appellant represented to the court that he was not notified of this initial denial of this motion to revise the sentence, and he filed a new motion arguing substantially the same grounds on

January 22, 2009.[6] The circuit court again denied appellant's motion on February 24, 2009, stating as follows:

> "[T]he Court will take no action on the defense Motion as the Court already ruled on the issues raised therein in a previous motion."

Appellant noted an appeal from the denial of this second motion, and raised the following issue before this Court:

> "Whether the Maryland General Assembly violated the Ex Post Facto clauses of the Maryland and United States Constitutions when it enacted a sentencing law, and applied it retroactively to conduct committed prior to enactment, with the new, more onerous law, prohibiting probation before judgment, whereas the former law authorized probation before judgment?"

In March, 2010, this Court directed the Clerk of the Court of Special Appeals to require the parties to answer the question of whether the circuit court had jurisdiction on August 9, 2004, to vacate a guilty plea entered in the circuit court on March 14, 1996. In response, appellant conceded that the circuit court had no jurisdiction to allow him to withdraw his 1996 guilty plea. Appellant stated as follows, in relevant part:

> "The Circuit Court had no authority under Md. Rule 4–242 [7] to withdraw the plea because (1) the motion to withdraw

---

**6.** The major substantive difference in the two motions was that the 2009 motion responded to the circuit court's reasoning in denying the 2007 motion. Henceforth we will refer principally to appellant's January 22, 2009 motion, because the denial of that motion is the basis for this appeal.

**7.** Md. Rule 4–242 provides as follows, in relevant part:

(g) *Withdrawal of plea.*—At any time before sentencing, the court may permit a defendant to withdraw a plea of guilty or nolo contendere when the withdrawal serves the interest of justice. After the imposition of sentence, on motion of a defendant filed within ten days, the court may set aside the judgment and permit the defendant to withdraw a plea of guilty or nolo contendere if the defendant establishes that the provisions of section (c) or (d) of this Rule were not complied with or there was a violation of a plea agreement entered into pursuant to Rule 4–243.

the plea was untimely, and (2) there were no grounds advanced that would have supported withdrawal of the plea.

\* \* \*

The Court had no authority to withdraw the guilty plea pursuant to the Modification Motion under Md. Rule 4–345(e) because that Rule only permits the Court to modify or reduce a 'sentence,' and it does not permit a Circuit Court to reverse or vacate a 'conviction.'

\* \* \*

When a Court lacks authority to act, it cannot acquire authority to act because the parties agree to the Court's action. Thus, the consent of the parties could not—and did not—confer authority on the Circuit Court to withdraw Mr. Bereska's 1996 guilty plea."

From these propositions, appellant prayed that this Court issue an order which "strik[es] the guilty plea that Mr. Bereska entered on August 9, 2004," "reinstat[es] the guilty plea that Mr. Bereska entered on March 14, 1996," and which "reinstat[es] the Motion for Modification or Reduction of Sentence that was [being] held *sub curia* in 2004." According to appellant, this Court should then "rul[e], consistent with Mr. Bereska's argument . . . that it would violate the prohibition against ex post facto laws to apply the 1995 'no PBJ' sentencing law, effective October 1, 2005, retroactively. . . ." In other words, appellant requests that this Court undo the effects of the jurisdictionally defective 2004 hearing, and then consider, and credit, appellant's Ex Post Facto Clause argument. Appellant urges that the trial court should be directed to "enter a probation before judgment without the condition that Mr. Bereska waive his right to expungement of the charges."

The State responded that the circuit court, as a court of general jurisdiction, possessed "fundamental jurisdiction" in this matter, but that the exercise of jurisdiction at the 2004 hearing was improper because the court relied upon Rule 4–345 to allow the withdrawal of a guilty plea. Notwithstanding the error, the State argues that any error in executing the

plea exchange was merely an improper exercise of its jurisdiction, and not an extrajurisdictional act. Consequently, it is not void as a matter of law. If the act was merely improper, the State continues, appellant should not prevail, because the circuit court acted not only in the absence of any objection by appellant, but at his behest. Because the court acted within its jurisdiction and because it was acting in favor of appellant, at appellant's request, this Court should allow the plea exchange to stand, and should deny appellant's request to strike the "no expungement" condition.

Alternatively, the State argues, even if the circuit court acted without jurisdiction, appellant is still not entitled to the relief he seeks. This Court lacks a basis to reinstate appellant's motion for modification, for several reasons: (1) there is no basis to reinstate his expired motion for modification; (2) there is no basis to rule on the constitutionality *vel non* of the 1995 amendment to Art. 27, § 641 precluding PBJ for offenses that occurred before the effective date of the amendment; and (3) there is no basis to remand this case with instructions to enter PBJ on the guilty plea. If this Court finds the circuit court acted without jurisdiction, the State concludes, the proper result is for this Court to remand the matter to the circuit court to reinstate the 1996 guilty plea.

Specifically as to appellant's proposed remedy that this Court reinstate his motion to modify his sentence, the State contends that because appellant's five-year probation term had expired by the time of the 2004 hearing, there was no sentence remaining to be modified. To complicate matters even further, the State relies on the Court of Appeals's 2004 amendment to Rule 4–345, which added the limitation to the Rule that a court "may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant." Md. Rule 4–345(e) (June 2004 Supp.).

## Applicable Law

Under the common law, Maryland courts possessed certain inherent powers over cases, including the authority to modify

or vacate judgments, during the "term of court" in which the case was heard. Black's Law Dictionary defines term of court as "[t]he period or session during which a court conducts judicial business." Black's Law Dictionary 1609 (9th ed. 2009). In Maryland, at least until 1951, courts had the power to set aside or change their judgments during the term of court. *See State v. Butler*, 72 Md. 98, 100, 18 A. 1105 (1890); *State v. Robinson*, 106 Md.App. 720, 722, 666 A.2d 909, 910 (1995). Since 1951, the power has been set forth in the Maryland Rules of Practice and Procedure.

The Maryland rule addressing term of court applicable at the time of appellant's guilty plea was as follows:

Rule 1206. Term of Court—Jury Sessions.

The courts of the respective counties shall hold terms each year beginning as indicated herein and continuing until the beginning of the next term. The jury sessions shall coincide with the terms of the court, unless otherwise indicated.

\* \* \*

e. Calvert County.

The third Monday in April and October.

The Court of Appeals described the significance of the term of a court as follows:

"It is well established and has been the law in this state, from the earliest days, that a court retains power over its own judgments and orders in both civil and criminal cases during the term at which they are entered or made. *Seth v. Chamberlaine*, 41 Md. 186, 194 [ (1874) ]; *State v. Butler*, 72 Md. 98, [100,] 18 A. 1105[, 1106, (1890) ]. This is also the Federal rule (*United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 [ (1931) ] )...."

*State ex rel. Czaplinski v. Warden*, 196 Md. 654, 657, 75 A.2d 766, 767 (1950). The United States Supreme Court described term of court as follows:

"The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be 'in the breast

of the court' making them, and subject to be amended, modified, or vacated by that court."

*Benz,* 282 U.S. at 306, 51 S.Ct. at 113 (internal citation omitted).

The inherent authority of courts to modify or vacate judgments terminated at the end of the term in which the particular judgment was entered. *See Greco v. State,* 347 Md. 423, 427–28, 701 A.2d 419, 421 (1997) (stating that the "authority to modify a judgment existed only during the term of court at which the judgment was entered."). Courts lacked the power to vacate or modify sentences after the term of court, under the rationale that "when a sentence has been passed, and has become enrolled, the jurisdiction of the court is concluded and the court has no further authority." *Czaplinski,* 196 Md. at 658, 75 A.2d at 768; *see also Thompson v. State,* 275 Ga.App. 566, 621 S.E.2d 475, 477 (2005) (stating that "when the term of court has expired in which a defendant was sentenced pursuant to a guilty plea, the trial court lacks jurisdiction to allow the withdrawal of the plea."). As Judge J. Dudley Digges wrote for the Court of Appeals in *Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981):

> " '[I]n Maryland all judgments are under the control of the court during the term in which they are entered, and during that time the court has inherent power to strike out or modify judgments in both civil and criminal cases.' *Madison v. State,* 205 Md. 425, 431, 109 A.2d 96, 99 (1954). In the absence of a statute or rule either modifying or rescinding this power, such authority survives."

*Id.* at 159–60, 433 A.2d at 1153.

The power of the court to revise sentences has been modified by the rule of the Court of Appeals, which provides that in all criminal cases, except cases involving bastardy, desertion, and non-support, the court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of appeal. *See* Rule 4–345.

██ Coram nobis, a civil matter, independent of the underlying action from which it arose, is available without limitation of time or terms of court, for issues which affect the validity and regularity of the judgment. *Ruby v. State,* 353 Md. 100, 111, 724 A.2d 673, 678–79 (1999). In 2000, in an opinion authored by Judge John C. Eldridge, the Court of Appeals explained as follows:

> "The purpose of the writ is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment."

*Skok v. State,* 361 Md. 52, 68, 760 A.2d 647, 655 (2000). In *Skok,* the Court recognized a broader coram nobis doctrine than that which prevailed under common law, treating the doctrine as encompassing not merely errors of fact, but also legal errors "of a constitutional, jurisdictional or fundamental character." *Id.* at 78, 760 A.2d at 661.

 To succeed on a coram nobis petition, a petitioner must not be incarcerated or on parole or probation; must state grounds of a constitutional, jurisdictional, or fundamental character; must be suffering significant collateral consequences from the conviction; and most overcome a presumption of regularity attaching to the initial criminal case. *Id.* at 78–79, 760 A.2d at 661. In order to preserve a coram nobis action, ordinarily a defendant who is convicted by means of a guilty plea must petition the court for leave to appeal, or else face a rebuttable presumption that the right to challenge the conviction is waived. *Holmes v. State,* 401 Md. 429, 474–75, 932 A.2d 698, 725 (2007).

Well after the period relevant to appellant's initial conviction and sentencing, in 2003, the Court of Appeals effectively sounded the death knell of the ancient concept of term of court in Maryland courts. In *State v. Griswold,* 374 Md. 184, 821 A.2d 430 (2003), the Court stated as follows:

"We note that, under Maryland Rule 16–107.a terms of the circuit courts now exist only for 'accounting and statistical reporting purposes.' "

*Id.* at 198, 821 A.2d at 439. As Judge Charles E. Moylan, Jr. observed, writing for this Court in *State v. Robinson,* 106 Md.App. at 724, 666 A.2d at 911, "[t]he fossilized relic of the very concept of a 'term of court' does not mix well with the spirit and intent of the modern Rules of Procedure."

Given that today the Maryland rules extend the court's jurisdiction to revise sentences and judgments beyond the term of court, when a court alters an enrolled judgment in a manner not envisioned by the Maryland rules, the judicial act may not merely be improper, but instead may exceed the jurisdiction of the court. *See Cardinell v. State,* 335 Md. 381, 385, 644 A.2d 11, 13 (1994), *overruled on other grounds by State v. Green,* 367 Md. 61, 78, 785 A.2d 1275, 1285 (2001) [8] (holding that where a defendant's "so-called 'supplemental' motion for modification was filed months later [than prescribed under Md. Rule 4–345], [the court] simply had no efficacy under the Rule [to modify the sentence]."). Judge John F. McAuliffe, writing for the Court in *Cardinell* later reiterated that "[t]his defect is not simply procedural, it is jurisdictional." *Id.* at 398, 644 A.2d at 19.

Judge Eldridge, writing in dissent in *Cardinell,* discussed the differences between when a court acts in excess of its

---

**8.** *Cardinell* encompassed two significant holdings, of which only the one concerning the efficacy of untimely motions to modify is relevant to our case. *Cardinell* held that the State possessed a common law right to appeal criminal sentences. *Id.* at 398, 644 A.2d at 19. This latter holding was overruled in 2001 in *State v. Green,* which stated as follows:

"The petitioner argues that *Cardinell* should be overruled because, to the extent a common law right to appeal criminal sentences ever existed, the Legislature abrogated that right when it enacted [Md. Code, Courts & Jud. Proc. Article] § 12–302(c). We agree."

*Green,* 367 Md. at 76, 785 A.2d at 1283. Despite this express overruling, we have drawn support from *Cardinell* concerning the jurisdictional nature of Rule 4–345. *See, e.g., State v. Karmand,* 183 Md.App. 480, 492–93, 961 A.2d 1152, 1159–60 (2008).

jurisdiction, and when a court acts without jurisdiction. Judge Eldridge explained as follows:

"The majority, like a few older cases in this Court, appears to view any decision by a tribunal which is inconsistent with, or unauthorized by, a statute or rule, to be beyond the tribunal's basic subject matter jurisdiction.

\* \* \*

This Court in *First Federated Com. Tr. v. Comm'r*, 272 Md. 329, 335, 322 A.2d 539, 543 (1974), in an opinion by Judge J. Dudley Digges, stated as follows:

'If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction.'

Under this test, the trial court's order in the present case was not beyond the court's jurisdiction.

In language directly applicable to the present case, this Court, speaking through Judge Cole, said in *Parks v. State*, 287 Md. 11, 16–17, 410 A.2d 597, 601 (1980):

'A statute which seeks to limit the period in which a court should exercise its authority does not deprive it of jurisdiction.... Thus, if the court exercises its power outside the prescribed period, its judgment is not thereby rendered void but only voidable.' "

*Cardinell*, 335 Md. at 424–25 n. 8, 644 A.2d at 32 (Eldridge, J., dissenting). The case *sub judice* does not involve an order exceeding a statutory grant of authority, but, instead, involves an order exceeding the jurisdiction of the circuit court, as defined initially by the term of court, and later by the Maryland rules.

■ Where the trial court has acted without jurisdiction, this Court has remedied the error by vacating the judgment and remanding the matter for the reinstatement of the original sentence. *See, e.g., State v. Cardinell*, 90 Md.App. 453, 601 A.2d 1123 (1992), *aff'd*, 335 Md. 381, 644 A.2d 11 (1994). The practice of vacating trial court actions when the court acts

without jurisdiction as to a previously entered judgment is consistent with the treatment of the more general category of "void" actions undertaken without jurisdiction. The Court of Appeals has explained when a decree will be void versus merely improper, as follows:

"What is meant by the lack of jurisdiction in its fundamental sense such as to make an otherwise valid decree void is often misunderstood. As Judge Horney noted for this Court in *Moore v. McAllister*, 216 Md. 497, 507, 141 A.2d 176 (1958):

'Juridically, jurisdiction refers to two quite distinct concepts: (i) the power of a court to render a valid decree, and (ii) the propriety of granting the relief sought. 1 Pomeroy, *Equity Jurisprudence* (5th ed. 1941), Secs. 129–31.'

It is only when the court lacks the power to render a decree, for example because the parties are not before the court, as being improperly served with process, *or because the court is without authority to pass upon the subject matter involved in the dispute*, that its decree is void."

*First Federated Commodity Trust Corp. v. Maryland Comm'r of Securities*, 272 Md. 329, 334, 322 A.2d 539, 543 (1974) (emphasis added). The Court of Appeals explained more recently that "the main inquiry in determining 'fundamental jurisdiction' is whether or not the court in question had general authority over the class of cases to which the case in question belongs." *County Comm'rs v. Carroll Craft Retail, Inc.*, 384 Md. 23, 45, 862 A.2d 404, 417 (2004). "[A]ny action taken by a court while it lacks 'fundamental jurisdiction' is a nullity, for to act without such jurisdiction is not to act at all." *Pulley v. State*, 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980).

Two Maryland rules are relevant to the jurisdiction of the circuit court to conduct the August, 2004 hearing: Rules 4–242 and 4–345.[9] They both describe powers encompassed originally by the term of court rule described above.

---

9. For avoidance of confusion, we note that appellant has made motions under Rule 4–345 at multiple points in this case. His initial motion to

Rule 4–242(g) governs the power of the court to allow the withdrawal of a guilty plea. That Rule provides for withdrawal of guilty pleas subsequent to sentencing, "in the interest of justice," upon a motion filed within ten days of sentencing, under the following three circumstances: (1) Where the provisions of Rule 4–242(c), concerning the required guilty plea colloquy, are not complied with; (2) where the provisions of Rule 4–242(d), concerning when a plea of nolo contendere can be entered, are not complied with; and (3) where there is a violation of a plea agreement.

Rule 4–345 prescribes the circumstances under which a court may revise a sentence, but does not provide any authority for the court to permit the withdrawal of a guilty plea. *See State v. Griswold,* 374 Md. 184, 194, 821 A.2d 430, 436 (2003) (pointing out that Rule 4–345(b) "limits the circuit court's revisory power to a 'sentence,'" and therefore could not be used to revise a guilty plea). At the time of appellant's sentencing in 1996, Rule 4–345 provided in relevant part as follows:

Rule 4–345. Sentencing—Revisory power of court.

\* \* \*

(b) The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (e) of this Rule [concerning desertion and nonsupport]. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the

---

modify under the court's general revisory powers was filed in 1996. His motion attacking the "no expungement condition" relied on a different subsection of Rule 4–345, addressing fraud, mistake, and irregularity. It was filed in 2007, and he filed a near-identical motion once again on January 22, 2009.

defendant leaves the courtroom following the sentencing proceeding.

The duration of a court's authority to act upon a properly filed motion to alter or amend a sentence under Rule 4–345 has changed during the period relevant to this proceeding. Until 2004, there was no express limitation on the period of time a trial judge could hold *sub curia* a proper motion to modify a sentence. In 2004, however, the Court of Appeals modified Rule 4–345(e) to limit the time within which a court enjoys general revisory power over sentences. The Rule, applicable only to sentences entered after July 1, 2004, now provides that a court may not "revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence."

As to sentences imposed before the effective date of the amendment, there was apparently no limitation on the duration of the Court's revisory power based on a timely filed motion to revise. Judge Eldridge explained as follows, writing for the Court of Appeals:

"The five-year limitation upon the Circuit Court's authority to revise a sentence under Rule 4–345(e)(1) was not in effect when the sentence in this case was imposed and when the motion under the Rule was filed. At that time, there was no time limitation upon a trial judge's authority under Rule 4–345(e)(1) to revise a sentence."

*Montgomery v. State,* 405 Md. 67, 71 n. 3, 950 A.2d 77, 80 (2008).

## Discussion

■ As appellant acknowledges, the guilty plea exchange which occurred at the August 9, 2004 hearing was fatally flawed, for several reasons. First, the motion appellant made in August 1996, and which the court held *sub curia,* was a motion for modification or reduction of sentence, under Rule 4–345. The circuit court lacked the authority to allow appellant to withdraw his plea under Rule 4–345, which concerns

the revision of sentences solely. *Griswold,* 374 Md. at 194, 821 A.2d at 436.

 Rule 4–242(g) addresses the circumstances under which a court may allow a defendant to withdraw a guilty plea. The Rule provides for withdrawal of a guilty plea under three specific, limited sets of circumstances. The record indicates, and appellant acknowledges, that none of those three situations is implicated here. Perhaps more important, appellant's motion, which the circuit court held *sub curia,* was not filed within ten days of the imposition of his sentence as required by Rule 4–242(g), and furthermore, was by appellant's admission, a motion for modification of sentencing under Rule 4–345, and not for withdrawal of his guilty plea. Not only did appellant fail to file a Rule 4–242(g) motion within ten days of his sentencing, but no such motion, even a belated and untimely one, has ever been filed by appellant to this very day.

Nothing appellant has done since the 2004 hearing has remedied the lack of jurisdiction. None of the legal mechanisms appellant raised in his 2007 and 2009 Motions to Revise Judgment based on Fraud, Mistake or Irregularity or Petition for Writ of Error Coram Nobis, created jurisdiction for the court's 2004 plea exchange. *A fortiori,* none of the sources of law appellant relied on can confer jurisdiction retroactively upon the court for the 2004 hearing and simultaneously require the modification of the sentence imposed at that hearing.

The coram nobis portion of appellant's 2009 motion could not supply the court with the jurisdiction it was lacking in 2004. Although a Petition for Writ of Error Coram Nobis provides an alternate basis for jurisdiction in criminal cases, appellant's coram nobis petition and argument arose only at the 2004 plea exchange, and complained of the "no expungement" condition imposed on appellant at that hearing. In other words, appellant's coram nobis argument accrued at the 2004 hearing, and did not supply the circuit court with the jurisdiction to conduct the hearing in the first place.

 Appellant's irregularity and mistake arguments fail as well. The failure of the parties and the court at the 2004

hearing to notice the 1995 change in the law, or the ex post facto issue allegedly created by that change, does not amount to irregularity or mistake under Maryland law.

Irregularity, as used in Rules 4–331(b) and 4–345(b), has been defined as an "irregularity of process or procedure . . . and not an error, which in legal parlance, generally connotes a departure from truth or accuracy of which a defendant had notice and could have challenged." *Hoile v. State*, 404 Md. 591, 624, 948 A.2d 30, 50 (2008). The Court of Appeals has recognized an irregularity, for example, where the court clerk's office failed to notify a party of a default judgment. *Maryland Lumber Co. v. Savoy Constr. Co.*, 286 Md. 98, 101, 405 A.2d 741, 743 (1979).

The only irregularity here, at best, is the action of the circuit court in permitting appellant to withdraw his guilty plea and enter a new plea to a different crime. Appellant's ex post facto argument, even if it has merit, is not within the class of issues which would constitute an irregularity or mistake under the Maryland rules. It is not an "error of process or procedure" amounting to an "irregularity." *Hoile*, 404 Md. at 624, 948 A.2d at 50.

Neither is the so-called error a mistake as contemplated by the Maryland rules. Maryland criminal cases have borrowed from civil 'mistake' precedent. *See Minger v. State*, 157 Md.App. 157, 171, 849 A.2d 1058, 1067 (2004). "As a grounds for revising an enrolled judgment, irregularity, as well as fraud and mistake, has a very narrow scope." *Id.*, 849 A.2d at 1066. The Court of Appeals has explained that "[t]he typical kind of mistake occurs when a judgment has been entered in the absence of valid service of process; hence the court never obtains personal jurisdiction over a party." *Chapman v. Kamara*, 356 Md. 426, 436, 739 A.2d 387, 392 (1999). Mistake has been recognized also where a default judgment was entered when the appropriate pleading had in fact been filed. *See May v. Wolvington*, 69 Md. 117, 14 A. 706 (1888).

In sum, by August of 2004, appellant had completed his probation, and the criminal matter over which the circuit court

had exercised its jurisdiction was concluded. No provision of the Maryland rules, and no motion by appellant, provided the circuit court with the authority to allow appellant to withdraw his 1996 guilty plea and exchange it for a different plea. By this advanced stage, his original guilty plea is inviolate. Because the circuit court lacked the jurisdiction to allow appellant to withdraw his plea and enter a new plea, the 2004 proceedings were void for lack of jurisdiction. The case is restored to its posture on March 14, 1996, the day of the court's original acceptance of appellant's guilty plea. We shall remand this case to the circuit court, with directions to vacate appellant's second plea, to reinstate appellant's initial, 1996 guilty plea for third-degree sexual assault, and to reinstate appellant's sentence.[10]

In the interest of thoroughness, we note that appellant has not preserved any argument applying his ex post facto theory to his initial, 1996 guilty plea. When appellant's guilty plea was offered and accepted on March 14, 1996, and when the sentence was imposed on May 17, 1996, nothing that happened was in any way unconstitutional or in error. On neither occasion did appellant raise the issue of ex post facto unconstitutionality. Neither the judge, nor anyone else involved, was aware of any statutory impediment that would have precluded PBJ if the judge had been inclined to grant it to appellant. Appropriately, no appeal was taken. Appellant waited eleven years to raise the argument that if the judge had wanted to grant appellant PBJ in 1996, he would have been precluded

---

**10.** In this appeal, appellant requests the Court to strike the "no expungement" condition of his 2004 guilty plea. Appellant's legal argument in support of this request is grounded in the ex post facto law doctrine, and relies alternatively upon a Rule 4–345(b) action to revise sentence for fraud, mistake, or irregularity, and an action in coram nobis. Because the condition of which appellant complains does not survive our resolution of this appeal, his legal argument is no longer applicable to any sentence condition. We do not consider whether the judge's 2004 sentence offended the ex post facto law doctrine, because the validity of the sentence imposed in 2004 is now irrelevant.

Whether appellant's initial motion to revise sentence is still viable has not been briefed or argued in this case, and therefore, we do not consider it.

unconstitutionally from doing so. In other words, appellant's ex post facto argument before this Court is itself very ex post facto.

An additional infirmity in appellant's ex post facto law argument as applied to his original conviction is that it relies on the willingness of this Court to entertain a supposition that appellant has made no attempt to prove at any time in the fourteen-year history of this case: that "the judge wanted to grant PBJ in 1996, but was precluded from doing so only by the 1995 amendment." The record, however, supplies no indication that the circuit court wanted to grant appellant PBJ in 1996. To the contrary, the judge's refusal to grant PBJ the first two times appellant requested it, in August 1996 and November of 1998, combined with the fact that the ex post facto issue was not brought to his attention by the State until 2002, makes the conclusion unavoidable that the trial judge had no designs to grant PBJ at appellant's original sentencing, particularly over the State's objection. Rather, at appellant's 1996 sentencing, the court exercised its undisputed prerogative not to grant appellant PBJ. Accordingly, we do not address the constitutionality *vel non* of the 1995 amendment to the Maryland Code.

### Coram Nobis

■ Lastly, we turn to the merits of the coram nobis issue raised in appellant's January, 2009 motion and petition before the circuit court. We address this question separately because coram nobis presents a potential alternative basis for the court to exercise jurisdiction over a prior judgment. Moreover, unlike a motion under Rule 4–345(b) to revise a sentence based on fraud, mistake, or irregularity, which is "part of the same criminal proceeding and not a wholly independent action," coram nobis represents a "separate civil action." *State v. Kanaras*, 357 Md. 170, 183, 742 A.2d 508, 516 (1999). Nonetheless, appellant's coram nobis petition fails for the same reason as appellant's other arguments: it is addressed ultimately toward appellant's 2004 sentence, when the underlying guilty plea itself is to be vacated.

The coram nobis portion of appellant's 2009 motion was premised on the argument that appellant received ineffective assistance of counsel in that defense counsel did not, at the 2004 hearing, raise the ex post facto issue to challenge the State's intention to impose the prohibition on expungement. Importantly, it was not predicated on the substantive issue of the alleged unconstitutionality of the 1995 Maryland probation before judgment statutory revision. The prejudice appellant alleged was that he was deprived improperly of the right to seek expungement of his 2004 guilty plea. His motion before the circuit court read as follows, in relevant part:

"Even though Mr. Bereska has no criminal record [because he was allowed PBJ in 2004], he is haunted by significant collateral consequences of being denied employment. Mr. Bereska, relying on the mistake of others, erroneously agreed not to seek expungement. The public record— accessible to all—shows that Mr. Bereska was charged with a sex offense and pleaded guilty to a sex offense. Potential employers do not look beyond that to learn that eight years later, Mr. Bereska's plea was vacated, and he pleaded guilty 'only' to child abuse. Moreover, potential employers do not understand the difference between probation and PBJ. Even if they did, in this society, the mere accusation of a sex offense forever dooms the accused in the eyes of anyone who ever learns of the accusation. All other persons with a PBJ, i.e., with no criminal conviction can have their record expunged, but Mr. Bereska cannot.

\* \* \*

Mr. Bereska respectfully requests the Court to schedule a hearing and, after the hearing, issue an Order, vacating the condition of probation that prohibits appellant from obtaining an expungement, as provided in this Court's Order, dated August 9, 2004."

■ Maryland courts will decline to adjudicate moot controversies. *See Attorney General v. Anne Arundel County School Bus Contractors Assoc.,* 286 Md. 324, 327, 407 A.2d 749, 752 (1979) (stating that "appellate courts do not decide

academic or moot questions."); *see also Hamot v. Telos Corp.*, 185 Md.App. 352, 360, 970 A.2d 942, 946 (2009). A question will be moot if, "at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Attorney General*, 286 Md. at 327, 407 A.2d at 752.

■■■ Appellant's argument that he deserves coram nobis relief in the form of a restored right to seek expungement of his 2004 PBJ is moot. As discussed *supra*, the 2004 plea exchange, in which the prohibition from seeking expungement was imposed, was in excess of the court's authority over its 1996 judgment, and is to be vacated. Accordingly, appellant will no longer be subjected to a prohibition on seeking expungement. Rather, appellant will be free to seek expungement to whatever extent it is available under the law as it relates to his 1996 conviction for third-degree sexual assault.

Even if appellant's coram nobis petition were not mooted by our holding, we would hold that counsel cannot have been ineffective at a proceeding that has now been held to have been a nullity. Appellant's coram nobis argument alleges that he was injured in his surrender of his entitlement to seek an expungement of the 2004 proceeding. The waiver of the right to seek expungement, however, was but an incident of the jurisdictionally flawed proceeding of August 9, 2004. In that the waiver no longer exists, there is obviously no prejudice that appellant has suffered as a result of counsel's failure to recognize the issue. Appellant's waiver is nothing more than a lesser included nullity within the greater nullity.

*JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY VACATED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE GUILTY PLEA OF AUGUST 9, 2004 AND REINSTATE THE 1996 GUILTY PLEA, SENTENCE AND JUDGMENT OF CONVICTION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.*