REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 425

September Term, 2014

———————————————

JARMAL JOHNSON

v.

STATE OF MARYLAND

———————————————

Meredith,
Berger,
Thieme, Raymond G., Jr.
        (Retired, Specially Assigned),

JJ.

———————————————

Opinion by Berger, J.

———————————————

Filed: July 1, 2015

Jarmal Johnson, appellant, appeals from the denial, by the Circuit Court for Baltimore City, of his motion to revise his sentences under Md. Rule 4-345(b) due to fraud, mistake, or irregularity. For the reasons stated herein, we affirm.

## FACTS AND PROCEEDINGS

In March 1992, police officers executed a search and seizure warrant at an apartment on Baker Street in Baltimore City. When the officers entered the premises, Johnson fired an automatic weapon in their direction. After firing several rounds, Johnson's gun jammed. His attempts to clear the jam were unsuccessful, yet Johnson refused to obey a command to put the gun down until the officers fired shots near his feet.

The police seized large amounts of heroin and cocaine from the apartment. Based on this incident, in one indictment (case number 192099061), Johnson was charged with attempted murder, common law assault, unlawful wearing, carrying, or transporting a handgun, and use of a handgun in the commission of a felony or crime of violence. In another indictment (case number 192099071), Johnson was charged with various controlled dangerous substance ("CDS") offenses.

In September 1992, following a jury trial on the above referenced charges, in case number 192099061 Johnson was acquitted of attempted murder, but found guilty of one count of assault with intent to murder, common law assault, and the two handgun offenses. In case number 192099071, the jury found Johnson guilty of possession of heroin with intent to distribute, possession of heroin, possession of cocaine with intent to distribute, possession of cocaine, conspiracy to possess heroin with intent to distribute, conspiracy to possess

cocaine with intent to distribute, and wearing, carrying, and transporting a firearm in relation to drug trafficking.

The following month, in an unrelated case (case number 192092011), another jury sitting in the Circuit Court for Baltimore City convicted Johnson of second-degree murder and the use of a handgun in the commission of a crime of violence. The same judge presided over both trials.

On October 28, 1992, Johnson was sentenced in all three cases. In case number 192099061, the court imposed a sentence of thirty years' imprisonment for assault with intent to murder and a consecutive twenty years for use of a handgun in the commission of a felony or crime of violence. The remaining convictions in that case merged for sentencing purposes.

In case number 192099071, Johnson was sentenced to twenty years' of imprisonment for the drug trafficking firearm offense, to run concurrently with the handgun sentence imposed in case number 192099061; sentenced to twenty years for possession of heroin with intent to distribute, to run consecutive to the handgun sentence imposed in case number 192099061; sentenced to twenty years for possession of cocaine with intent to distribute, to run consecutive to the sentence for possession of heroin with intent to distribute; and sentenced to twenty years for the conspiracy counts (which the court merged), to run consecutive to the sentence for possession of cocaine with intent to distribute.

In case number 192092011, Johnson was sentenced to thirty years' of imprisonment for second-degree murder, to run consecutive to all the other sentences imposed, and to

2

twenty years for the handgun conviction, to run consecutive to the sentence for second-degree murder. The total aggregate sentence was 160 years of imprisonment.

In 2008, Johnson filed a motion to correct an illegal sentence under Md. Rule 4-345(a) claiming that his sentence for assault with intent to murder was illegal because that specific offense was not included in the indictment. Ultimately, the Court of Appeals agreed with Johnson and vacated his conviction and sentence for assault with intent to murder. *Johnson v. State*, 427 Md. 356, 380 (2012). The Court refused, however, to also vacate Johnson's conviction for the use of a handgun in the commission of a felony or crime of violence, observing that "the record shows the factual and legal predicate" for that offense. *Id.*

In 2014, Johnson filed a *pro se* motion, pursuant to Md. Rule 4-345(b), requesting that the circuit court exercise it revisory power over his sentences due to fraud, mistake, or irregularity.[1] Specifically, he claimed that his "trial and decision making was impaired" by the "illegal conviction" for assault with intent to murder and that the sentencing court impermissibly relied upon that offense in imposing the balance of his sentences. Johnson requested a new trial, a new sentencing hearing, and "new plea agreement offer." The circuit court denied the motion, prompting this appeal.

---

[1] Maryland Rule 4-345(b) provides: "The court has revisory power over a sentence in the case of fraud, mistake, or irregularity."

## DISCUSSION

## I.

### *The State's Motion to Dismiss*

The State initially asserts that the denial of Johnson's motion to revise his sentences under Rule 4-345(b) is not an appealable order and, therefore, it moves to dismiss this appeal. Specifically, the State contends that a motion to revise a sentence on the ground of fraud, mistake, or irregularity "has a statutory basis" in Md. Code (1974, 2013 Repl. Vol.), § 6-408 of the Courts and Judicial Proceedings Article ("CJP"). Further, Md. Code (2001, 2008 Repl. Vol., 2014 Supp.), § 7-107(b)(1) of the Criminal Procedure Article ("CP"), which is part of the Uniform Postconviction Procedure Act, bars an appeal in "a case in which a person challenges the validity of confinement under a sentence of imprisonment . . . by invoking a common law or statutory remedy other than" the Postconviction Procedure Act. Therefore, the State maintains that "a defendant may appeal from the denial of a claim of 'fraud, mistake, or irregularity' in his sentence only if raised under" that Act. As a result, according to the State, because Johnson did not pursue his claim of "fraud, mistake, or irregularity" in a post-conviction proceeding, the instant appeal is barred by the Postconviction Procedure Act. We disagree.

Contrary to the State's assertion, the subsection of the rule invoked by appellant, Rule 4-345(b), is not a "statutory remedy." The statute cited by the State as a "source" of Rule 4-345(b), that is, CJP § 6-408, was not even enacted until years after the Maryland Rules

4

provided that a court retains revisory power over criminal judgments in case of fraud, mistake, or irregularity.  Whereas CJP § 6-408 was first enacted in 1977,[2] *see* 1977 Md. Laws, ch. 271 at 1940-41, long before then, the Maryland Rules pertaining to criminal cases contained a similar provision:[3]

> For a period of ninety (90) days after the imposition of a sentence, or within ninety (90) days after receipt by the court of a mandate issued by the Court of Appeals upon affirmance of the judgment or dismissal of appeal, or thereafter, pursuant to motion filed within such period, the court shall have revisory power and control over the judgment or other judicial act forming part of the proceedings.  The court may, pursuant to this section, modify or reduce, but shall not increase the length of a sentence.  After the expiration of such period, the court shall have revisory power and control only in case of fraud, mistake or irregularity.

---

[2] As originally enacted, Courts and Judicial Proceedings Article, § 6-408, provided:

> For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment.  After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

The statute has remained in effect ever since without change.  It is substantially similar to Maryland Rule 2-535(a)-(b), the rule concerning a court's revisory power over a civil judgment.

[3] The civil provision was Rule 625, which long predated CJP § 6-408.  Rule 625 (1957) provided in part:  "After the expiration of such period [thirty days after the entry of a judgment, or thereafter pursuant to a motion filed within such period,] the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

5

Md. Rule 764 b (1961).

It is clear, therefore, that CJP § 6-408 was not the "source" of a court's revisory power over a judgment, in either a criminal or a civil case. In *Bereska v. State*, 194 Md. App. 664, 680-81 (2010), we explained that the source of a court's revisory power over a judgment was its "inherent" power to do so, a power which, at common law, "terminated at the end of the term in which the particular judgment was entered." *Id.* at 682. Although the time during which a circuit court retains revisory power over its judgments has since been amended by rule, *id.* at 681-82, the source of a court's revisory power has not changed.

In *State v. Kanaras*, 357 Md. 170 (1999), the State presented a similar argument in a related context in an appeal taken from the denial of a motion to correct an illegal sentence. The Court of Appeals expressly rejected the State's argument, holding that:

> "[A] motion to correct an illegal sentence is not a 'statutory' remedy. Statutes are enacted by the General Assembly of Maryland. The Maryland Rules are adopted by the Court of Appeals. As the *Wilson*[4] court noted, the Maryland Constitution does provide that rules adopted by the Court 'shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law.' Maryland Constitution, Art. IV, § 18(a). Nonetheless, the fact that the Maryland Rules have the force of law does not mean that a rule is a statute."

*Id.* at 183 (quoting *Valentine v. State*, 305 Md. 108, 123 (1985) (Eldridge, J., dissenting)).

---

[4] *Wilson v. State*, 227 Md. 99 (1961), *overruled by State v. Kanaras*, 357 Md. 170 (1999).

6

The Court further explained that "the language of the Post Conviction Procedure Act obviously refers to separate common law or statutory causes of action, such as habeas corpus or coram nobis actions which are separate civil actions." *Id.* Observing that it is "doubtful" that the Court's rule-making authority "would extend to the creation of a separate cause of action" and that, in any event, "there is no indication in the language or history of Rule 4-345 that the court intended to create a separate cause of action," the Court concluded that a motion to correct an illegal sentence "is part of the same criminal proceeding and not a wholly independent action." *Id.* Consequently, the *Kanaras* Court held that the Postconviction Procedure Act "does not preclude an appeal from a circuit court's ruling under Rule 4-345." *Id.* at 184.

The State relies upon *Hoile v. State*, 404 Md. 591 (2008), in further support of its contention that the denial of a motion, under Rule 4-345(b), is not appealable. We disagree. Indeed, as the State concedes, there is language in *Hoile* suggesting that an appeal would lie from the denial of a Rule 4-345(b) motion. *See Hoile*, 404 Md. at 615 ("There is much caselaw holding that the denial of a motion to modify a sentence, **unless tainted by illegality, fraud, or duress**, is not appealable.") (emphasis added).

In *Hoile*, the Court of Appeals considered whether an appeal would lie from the denial of a motion to modify a sentence, under Rule 4-345(e), which permits a sentencing court to revise a sentence, "[u]pon a motion filed within 90 days after [its] imposition," except that "it may not revise the sentence after the expiration of five years from the date the sentence

7

originally was imposed on the defendant and it may not increase the sentence." Md. Rule 4-345(e)(1). In *Kanaras*, the Court observed that it had surveyed the landscape of inconsistent and conflicting decisions concerning the appealability of motions under Rule 4-345(a) and had ultimately overruled those decisions that had interpreted the Postconviction Procedure Act as categorically barring appeals from the denial of such motions. In doing so, the Court in *Kanaras* rejected the older view that a Rule 4-345(a) motion be deemed a "statutory remedy." *Hoile*, 404 Md. at 617; *Kanaras*, 357 Md. at 183-84.

Because *Kanaras* analyzed but did not overrule one of those older decisions, *Costello v. State*, 237 Md. 464 (1965), the *Hoile* Court concluded that *Costello* remains "good law," despite the fact that *Costello* "largely" relied upon *Wilson v. State*, 227 Md. 99 (1961), one of the decisions expressly overruled by *Kanaras*. *Hoile*, 404 Md. at 617. Interpreting *Costello* as drawing a distinction between "motions to correct a sentence based upon an error of law and motions to reconsider sentence that are entirely committed to a court's discretion," the Court of Appeals held that a Rule 4-345(e) motion falls entirely within the trial court's discretion and that the denial of such a motion is, therefore, unappealable. *Hoile*, 404 Md. at 617-18.

The State now relies upon *Costello* and insists that the present appeal is barred by the Postconviction Procedure Act. This requires us to briefly consider *Costello*. In that case, Costello appealed from the denial of a motion to modify or reduce his 360-day sentence for assault, on the ground that it had been "imposed in violation of constitutional and legal

8

mandates." Costello argued that an Assistant State's Attorney, who had previously represented Costello's wife in an unrelated case, had given the sentencing court information that reflected adversely upon Costello. *Costello*, 237 Md. at 467-68. The State moved to dismiss the appeal, for two reasons. The State contended that a sentence "within the limits prescribed by law . . . ordinarily may not be reviewed on appeal," and therefore, there was no colorable claim that a 360-day sentence for assault "constituted cruel and unusual punishment." The State further argued that the Postconviction Procedure Act bars an appeal from the denial of a motion to modify or reduce a sentence. *Id.* at 469-70. The Court, citing *Wilson*, agreed with the latter contention, but it characterized Costello's argument as a due process challenge to the procedures followed by the sentencing court, and, "to avoid the delay and expense of" a postconviction challenge raising the same claim, it addressed the merits of that claim but ultimately rejected it. *Id.* at 470, 474.

In essence, the State interprets *Hoile* and *Costello* as holding that a claim invoking Rule 4-345(b) alleging fraud, mistake, or irregularity in the imposition of a sentence, may only be brought under the Postconviction Procedure Act. We reject that interpretation, because it rests squarely upon a rationale, expressed in *Wilson*, that has been subsequently repudiated by the Court of Appeals in *Kanaras*. *See Bereska*, *supra*, 194 Md. App. at 692 (observing that a Rule 4-345(b) motion is, like a Rule 4-345(a) motion to correct an illegal sentence, "part of the same criminal proceeding and not a wholly independent action") (quoting *Kanaras*, 357 Md. at 183). Rather, we interpret *Hoile* as permitting the instant

9

appeal, because the question of whether a sentence has been imposed based upon fraud, mistake or irregularity is a mixed question of fact and law rather than an issue that turns on the application of judicial discretion. Consequently, according to *Hoile*, it is only an appeal from the denial of a motion "entirely" within a sentencing court's discretion that is barred. *Hoile*, 404 Md. at 617-18.

Accordingly, we deny the State's motion to dismiss this appeal.

**II.**

***The Merits***

Before addressing the contentions, we pause to summarize pertinent portions of the sentencing proceeding.

On October 28, 1992, Johnson appeared in court for sentencing in all three cases. Defense counsel, after acknowledging that Johnson was facing an aggregate total sentence of 180 years, urged the court to show leniency.

> [DEFENSE COUNSEL]: Certainly these are his first two crimes of violence. And although I don't wish to sound as if I'm trying ex post facto to excuse his behavior, I must point out that the jury sat and heard all the testimony put on by the State and all the evidence and realized that perhaps there is some sort of mitigation for the use of a firearm at 11:10 in the evening at 630 Baker Street.
>
> I mean the simple fact is, Your Honor, if I was in that kind of neighborhood on a more regular basis, you can be sure that there'd be a weapon in my armpit here. There is just no way in the world you are going to be traveling those kinds of streets unarmed. It is a truly terrifying place to be and I think that's the reason the jury found my client not guilty of four counts of

10

attempt[ed] murder [of the police officers conducting the drug raid].

I think that's why the jury only returned one count of assault with intent [to murder]. As to the CDS, I mean, I don't think there's any question he's in the apartment and I, from the very outset, had bought into the fact that he was going to be convicted of that at trial, that a jury would certainly be able to find a suitable nexus between him and narcotics.

\* \* \*

THE COURT: In a legal sense, it would have been a different result is this were a court trial; do you understand? But it wasn't. It was a jury trial and you were able, through your argument, to persuade the jury that some of these charges did not apply, and that was accurate. And I think the jury did a good job, to with what they had.

[DEFENSE COUNSEL]: What I'm asking from the Court - -

THE COURT: I'm sorry, but what I'm trying to tell you, the facts that were available to me when you first came into my chambers with the State are a lot different - - although I never bind myself to - - to what was exposed at trial.

I mean, what he actually did, according to the testimony of Officer Melvin Russell was actually try to clear his gun, to - - I don't know if it's the right word - - but to place in the chamber - - what's that breech?

[DEFENSE COUNSEL]: Yes.

THE COURT: I'm not quite sure. But there was a bullet that had jammed his gun. He was trying to un-jam it, if that's the right word.

[DEFENSE COUNSEL]: Yes.

11

THE COURT:   And Detective Russell had to shoot once or twice in the direction of the Defendant, yelling to him, "Drop the your gun," to get him to drop it.

Now, he wasn't just trying to unload his gun.  That gun was pointed at Officer Russell.  Officer Russell believed that if that gun were armed properly, he would have been shot and I think Officer Russell was justified in the conclusions that he drew.

Very serious case.  Very serious.

[DEFENSE COUNSEL]:   And I haven't suggested otherwise, Your Honor.  What I'm pointing out is that there are some mitigative - -

THE COURT:  I can't think of any.  I'm waiting for you to tell me.  But I can't think of any.

*   *   *

My personal opinion, although that and 25 cents, or I guess 60 cents, will buy a cup of coffee.  The reason there was not first degree was that the jury did not know why it happened.  Could not link any - - nobody knew.  You understand?

And did not accept the fact that in a legal sense that the time between individual shots is the time in which a willful, premeditated and deliberate intention to kill the individual could be formed.  "Boom, boom, boom," plenty of time for the mind to form the requisite mens rea required in first degree.

The jury was not persuaded, and I understand why.  That is a legal axiom which may or may not be based upon good judgment.

*   *   *

[DEFENSE COUNSEL]:   But when Your Honor passes sentence in a few moments, I'm asking Your Honor to take that into account.  The jury made it's [sic] call.  The jury.  Twelve

12

good citizens looked at this and said maybe there's something else the police could've done that would've made this attempted murder. Like if they had announced themselves. Whether you hear police before anything happens.

But with the door crashing, and as I likened in the closing argument, the last 30 seconds of the NCAA finals, and I don't know if Your Honor is a basketball fan, but when you're so totally involved in what you're doing that what's going on around you is totally a blur.

And that Mr. Johnson at that point, was interested in saving or defending his life, he's shooting back and he's not sure why. And this is the argument I made to the jury as Your Honor recalls. And at that point he doesn't even realize. I'm sure he didn't understand it was the police until Mel Russell put the badge underneath his nose and took the gun away from him, when the gun was, at that point, inoperable.

Because of my client's lack of familiarity with the gun and Mel Russell explained to the Court on cross that he knows how to clear a stove pipe, that kind of jam between the slide and the barrel of a 9 millimeter Gloc[k] and my client didn't, which shows that my client's no pro.

Okay. And these kinds of things I think Your Honor should take into account. And because he's only 21 - - if Your Honor gives him the kind of time that I fear Your Honor is contemplating, 70 or 80 years or something like that, he'll never get out of jail. He'll never have a chance. He'll have nothing, no reason to change, if change is the right word. No reason to grow which I think is a better word. He'll have no[ ] reason to become a better person assuming one can become a better person in the Division of Corrections.

Defense counsel continued advocating for the court's mercy, noting that Johnson was a "ninth grade dropout" and had "never known any other opportunity than dealing drugs and making money from it." Defense counsel continued:

13

[DEFENSE COUNSEL]: I don't think Your Honor is permitted to sentence him based on what could've happened, that somebody could've been killed. I mean, one could easily say that he had no more intent to kill than the cops.

They fired three times as many shots and didn't hit anybody. And I don't think they would have at all hesitated to kill somebody they thought was shooting at them.

The simple fact is, in this darkened apartment we're lucky that this is not a capital, that this is not another [death of a police officer]. For that we all thank our lucky stars, not least of which, Jarmal Johnson.

Defense counsel concluded with a final plea for "compassion" in sentencing, suggesting that "all the narcotics offenses" and the handgun offenses run concurrently. But, if the court were to impose sentences to run consecutively, "even if it's 180 years," defense counsel urged the court to "suspend a major portion of that."

After Johnson declined to speak on his own behalf, the court reviewed the pre-sentence investigation report ("PSI"), which indicated that Johnson had been convicted of two CDS offenses in New York. The court continued:

THE COURT: The Pre-Sentence Report indicates that they [New York authorities] had, according to their parole and probation risks assessments had determined that he poses a significant threat to public safety.

* * *

Also describes him as a 20-year old native of New York.

The offense was - - it was clear to me with regard to the first offense, the case in which police officers served a search and seizure warrant. I agree that lighting was a problem. I also

14

agree that, from the evidence that there was announcement of authority promptly. That if there was some, little or any doubt initially, that that doubt should have been resolved quickly. There were in excess of 50 some shots fired in that building. I'm also mindful that this was a row home.

Row homes are unique to Baltimore City. Many of our counties don't even have row homes, of course they call them townhouses and they're six figures. But this was a row home. And as such, was on one side through an airway, had windows.

There was a description of shots through those areas, shots in fact all over and in all directions. This posed not only a legitimate threat to the police officers and to the occupants of that property, but also to adjacent property owners, adjacent residents, yes, and people walking on the street.

Very dangerous multiple shots fired in quick succession, that's what the evidence showed. Multiple shots that were continuously fired for a period of time. I mean, it was - - the description was just horrible and we are lucky that this is not a capital offense.

Defendant's background shows a[n] utter disregard of anyone's rights. Of course, I am also mindful that it is considerably easier for someone without any strong roots in the community to act in a lawless fashion where he or she does not reside, where he or she does not have any roots, where he or she does not have strong family ties.

With respect to the second case [case no. 192092011] involving the death of Mr. Hill, it just seems senseless. There was a man who was working making a what apparently was meager living at a snowball stand known as "The Snowball Man" who was killed for no apparent reason. I mean, just killed like a dog in the street. It's horrible.

Therefore, with respect to having said that and having heard the argument of both sides, reading the entire Pre-Sentence Report, with respect to case 192099061, assault with intent to murder

15

> Officer Melvin Russell, I sentence the Defendant to 30 years Division of Corrections.

The court went on to sentence Johnson for the other offenses and, as noted, imposed an aggregate total sentence of 160 years of imprisonment.

We turn now to the contentions on appeal. Johnson asserts, in essence, that his sentences were the product of fraud, mistake, or irregularity because the sentencing court impermissibly considered the subsequently vacated conviction for assault with intent to murder when sentencing him on the remaining charges. He maintains that the sentencing court should not have relied "upon a past criminal record" that was "untrue." Consequently, he believes he is entitled to "a new trial, a new sentencing hearing, a new plea agreement offer, and a new modification of sentence hearing, where the illegal conviction for assault with intent to murder would not be considered[.]"

The State correctly points out that Johnson's conviction for assault with intent to murder was not vacated by the Court of Appeals because it was "untrue," but rather because that offense was not specifically charged in the indictment and the indictment was never amended to include it. *See Johnson, supra,* 427 Md. at 380. Moreover, the State asserts that, in determining what sentences to impose, it is permissible for a sentencing court to "consider the evidence it heard at trial," including the testimony at Johnson's trial that he had "fired at

16

a police officer during a drug raid."[5]  Finally, the State notes that, under Rule 4-345(b), the court has revisory power over a *sentence* in the case of fraud, mistake, or irregularity and, consequently, "to the extent that Johnson also is arguing that his *convictions . . .* are infirm, such a claim is not properly" before this Court.

We agree with the State.  The Court of Appeals has stated on numerous occasions that "'a trial judge has very broad discretion in sentencing.'" *Abdul-Maleek v. State*, 426 Md. 59, 71 (2012) (quoting *Jones v. State*, 414 Md. 686, 693 (2010)) (further quotation omitted).  In fashioning a sentence, the Court of Appeals has said that the court should consider "the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background.'"  *Id.* (quoting *Jackson v. State*, 364 Md. 192, 199 (2001)).  In addition, "sentencing judges in Maryland may consider the criminal conduct of a defendant even if there has been no conviction[,]"  *Smith v. State*, 308 Md. 162, 169 (1986), as well as "uncharged or untried offenses."  *Id.* at 172.

---

[5] After Johnson was sentenced, he appealed.  In an unreported opinion, this Court affirmed.  *Jarmal Johnson a/k/a German Johnson, Gary W. Matthews and Thomas Williams v. State*, No. 1730, September Term, 1992 (filed July 28, 1993).  In our summary of the facts, we noted the testimony of Officer Melvin Russell that Johnson had pointed a gun toward the doorway where the officer was standing and had fired at least several rounds. Slip op. at 2.  It appears, from the limited record before us, that this evidence formed the bases for the assault with intent to murder conviction.  Johnson did not challenge the conviction for assault with intent to murder in his direct appeal.

We are not persuaded that the sentences Johnson received were the result of any fraud, mistake, or irregularity – nor the result of any improper consideration of the subsequently vacated assault with intent to murder conviction. As the Court of Appeals observed in *Henry v. State*, 273 Md. 131 (1974), when imposing sentence "the trial judge [is] not required to remain oblivious to evidence" of the defendant's involvement in crimes for which he was acquitted. *Id.* at 150. Notably, the jury here convicted – not acquitted – Johnson of assault with intent to murder. Johnson did not challenge that conviction in his direct appeal and it was subsequently vacated, *not* because the evidence was insufficient to support the crime, but because the State had never charged him with that particular offense.[6]

Moreover, in its comments before imposing sentence, the court noted that Johnson's firing of multiple shots when the police raided the apartment had posed a serious threat not only to the police officers conducting the raid, but to adjacent neighbors and the public on the street; that Johnson had senselessly murdered the operator of a snowball stand; and that the PSI indicated that New York authorities had previously determined that Johnson "posed a significant threat to public safety."

---

[6] The jury also convicted Johnson of common law assault. For sentencing purposes, the court merged that conviction with the conviction for assault with intent to murder.

18

Accordingly, we hold that the circuit court did not err in denying Johnson's Rule

4-345(b) motion to revise his sentences.

**STATE'S MOTION TO DISMISS DENIED. JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**