*Warren Schmidt v. State of Maryland*, No. 2795, September Term, 2018.  Argued: October 4, 2019.  Opinion by Gould, J.

**SENTENCING AND PUNISHMENT – PROBATION AND RELATED DISPOSITIONS – GROUNDS AND CONSIDERATIONS IN GENERAL**

Md. Code Ann., Crim. Proc. ("CP") § 6-220 (2001, 2018 Repl. Vol.), which states that a court may, under certain circumstances, stay the entering of judgment and place a defendant on probation after a guilty verdict, applies to a judgment on a guilty finding or guilty plea that would have otherwise become final upon sentencing.  Therefore, CP § 6-220 does not apply to a judgment that has already been made final through a finding of not criminally responsible ("NCR").

**SENTENCING AND PUNISHMENT – RECONSIDERATION AND MODIFICATION OF SENTENCE – DISPOSITION – OTHER DISPOSITIONS**
Md. Rule 4-345(e)(1), granting a court the power to revise a sentence, does not apply to a finding of NCR.  A finding of NCR is not a "sentence" as the term is contemplated by the Rule.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2795

September Term, 2018

_____

WARREN SCHMIDT

v.

STATE OF MARYLAND

_____

Reed,
Beachley,
Gould,

JJ.

_____

Opinion by Gould, J.

_____

Filed: April 7, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Appellant Warren Schmidt appeals from the denial by the Circuit Court for Montgomery County of his motion under Md. Rule 4-345(e) to convert a not criminally responsible ("NCR") finding to a probation before judgment ("PBJ").

We hold that the trial court correctly denied Mr. Schmidt's motion. As we explain below, the PBJ statute—Md. Code Ann., Crim. Proc. ("CP") § 6-220 (2001, 2018 Repl. Vol.)—applies to a guilty finding or guilty plea that would have otherwise become final upon sentencing, not a judgment made final by a finding of NCR. When Mr. Schmidt decided to plead guilty, he came to a fork in the road: he could either plead NCR or he could proceed to sentencing and seek a PBJ under CP § 6-220. Both options had their own risks and potential benefits. Mr. Schmidt chose the former rather than expose himself to the risks of the latter. With the State's agreement, the court found him NCR and imposed a five-year conditional release under which he was released to the community subject to the supervision and care of the Department of Mental Health and Hygiene (the "Department").[1] After successfully completing his conditional release, Mr. Schmidt tried to return to that fork in the road and take the other path by requesting a PBJ in order to ultimately have his record expunged.

Finding that the PBJ statute does not apply to defendants found NCR, the circuit court denied Mr. Schmidt's request. For the reasons explained below, we conclude that the circuit court's ruling was correct, and in addition we hold that Rule 4-345, which only allows the modification of a "sentence," does not apply to a finding of NCR.

---

[1] The Department is now known as the "Department of Health."

Accordingly, we affirm.

## BACKGROUND FACTS AND LEGAL PROCEEDINGS

In October 2012, Mr. Schmidt arrived at Suburban Hospital in Bethesda with an injured wrist. At that time, he was in the midst of a not-yet diagnosed schizophrenic episode. After a nurse completed drawing his blood, Mr. Schmidt stood up suddenly and began to strangle her. She was eventually rescued, but not before sustaining significant injuries.

Based on a pretrial psychiatric evaluation finding that Mr. Schmidt was no longer a danger to himself or to society, Mr. Schmidt and the State agreed that he would plead guilty to first-degree assault and assert (and the State would not contest) a plea of NCR, and the State would agree to supervised conditional release.

Pursuant to that agreement, Mr. Schmidt pleaded guilty to first-degree assault and a sentencing hearing was scheduled for a later date. At the November 7, 2013 sentencing hearing, the court found Mr. Schmidt NCR and imposed a five-year conditional release under the supervision of the Department. At the conclusion of the hearing, the court told Mr. Schmidt that he had 90 days to file a motion for modification.

On February 7, 2014, Mr. Schmidt filed a motion for modification under Maryland Rule 4-345. Instead of seeking a prompt hearing, Mr. Schmidt requested that the motion be held in abeyance pending a request for a hearing, so that in the future he could seek to modify his disposition. The court accepted the motion for filing and agreed to hold the motion in abeyance.

2

More than four years later, on July 18, 2018, Mr. Schmidt requested a hearing on his motion for modification, which the court granted. At the September 20, 2018 hearing, the court questioned whether a PBJ was legally available in Mr. Schmidt's case because of the NCR finding and requested that the parties provide supplemental briefing on that issue.

Mr. Schmidt argued in his supplemental brief that CP § 6-220[2] allows a court to "stay the entering of [a judgment]" in cases such as this where the defendant had been found guilty. Specifically, he noted that a "judgment," not a "conviction," is what triggers CP § 6-220, and that under Langworthy v. State, 284 Md. 588 (1979), an NCR finding constitutes a final judgment.

Mr. Schmidt also referred to recent changes in expungement law that, he contended, bolstered his position. Under this new legislation, several categories of crimes—including relatively less serious crimes where the defendant had been found to be NCR—could be expunged without a prior PBJ ruling. Mr. Schmidt argued that these changes did not exclude the possibility of expunging other NCR findings through the mechanism of a PBJ. Mr. Schmidt further argued that "the fact that a small category of crimes can be expunged if the defendant has a finding of NCR indicates that for other more serious crimes for which

---

[2] CP § 6-220(b)(1) states:

When a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may stay the entering of judgment, defer further proceedings, and place the defendant on probation subject to reasonable conditions if:
      (i) the court finds that the best interests of the defendant and the public welfare would be served; and
      (ii) the defendant gives written consent after determination of guilt or acceptance of a nolo contendere plea.

3

there was an NCR finding, a Defendant would have to be granted [a PBJ] before petitioning for expungement."

The State countered that there is no statute or case that would allow for a PBJ after the defendant had been previously found NCR. According to the State, the discussion of "final judgment" in <u>Langworthy</u> was in the context of determining the appealability of a guilty finding when the defendant is found NCR, and has no bearing on the concept of "judgment" for purposes of CP § 6-220. Further, the State contended that CP § 6-220 only applies when the defendant is placed on probation and that an NCR finding does not contemplate or permit probation. Finally, the State noted that the General Assembly's recent allowance for the expungement of NCR findings for certain crimes reflected an intent to deny expungement for other crimes.

In reply, Mr. Schmidt argued that the State failed to meaningfully distinguish <u>Langworthy</u> or cite to any authority precluding a PBJ for a defendant found NCR. He also contended that CP § 6-220 does not require a period of probation because, in practice, many cases are disposed of under that section without probation. Finally, he argued that it would be fundamentally unfair to deprive him of a legal mechanism to have his judgment expunged.

On November 13, 2018, the court held another hearing where both Mr. Schmidt and the State advanced the arguments set forth in their supplemental filings. The court agreed with the State and explained its finding that Mr. Schmidt was not eligible for a PBJ:

> . . . So, in looking at the statutes, looking at the probation before judgment statute and looking at the expungement statutes and looking at the <u>Langworthy</u> case, the legislature has the authority to define those instances

4

in which the probation before judgment is permitted. And they've indicated that when a defendant pleads guilty or nolo contendere or is found guilty of a crime, meaning after a trial, the Court may stay the entering of the judgment and defer further proceedings and place the defendant on probation subject to reasonable conditions.

So, in this case the defendant admitted his involvement in the case. However, because of an evaluation he was found not criminally responsible. So, there was no sentence actually imposed rather, he was sent for treatment. And so, at this point, I don't believe that the probation before judgment is a mechanism, that can be used in a case where a person has been found NCR in a case. Because I believe that in a criminal case, the judgment is, the final judgment in a criminal case is the sentence imposed. It's the fine, it's the sentence, it's the probation. That is the judgment in a criminal case.

And in this case, because of the not criminally responsible finding, there was no final judgment as its understood in the criminal sense. And it's not a guilty finding for any purpose. And the purpose of the probation before judgment is to remove the guilty finding. And in this case the eventual finding is not criminally responsible. The final judgment is not a guilty finding, the final judgment is an NCR finding.

\*\*\*

The legislature has not included that in the probation before judgment statute, and so I don't think that it's the kind of final judgment from which a probation before judgment was envisioned by the legislature. The[y] certainly have the ability to include that just as they have in the expungement statute. But they have not done so in the probation before judgment. So, I don't believe that there's been a satisfactory demonstration here that the defendant is permitted to make this request under 6-220. So, at this point, I'll deny the motion to grant the probation before judgment at this time because I don't think the statute contemplates that in an NCR finding.

This timely appeal followed.

## DISCUSSION

The parties' arguments on appeal are largely the same as those presented to the circuit court. Mr. Schmidt argues that the circuit court made legal errors (which are reviewed without deference) in holding that an NCR finding was not a guilty verdict or a "judgment" and that CP § 6-220 did not apply in this instance. Mr. Schmidt contends that, contrary to the court's holding, a finding of guilt must precede an NCR finding, and that

5

an NCR finding is a "judgment" under <u>Langworthy</u>. According to Mr. Schmidt, therefore, the prerequisites of CP § 6-220 are satisfied when a defendant is found to be NCR.

The State counters that the court correctly denied Mr. Schmidt's motion to modify his sentence because Rule 4-345—the procedural vehicle used by Mr. Schmidt to seek a PBJ—does not apply to NCR findings.[3]

Here, we must determine whether the court was legally correct when it ruled that it lacked the ability to modify its finding of NCR to impose a PBJ. We hold that the trial court was legally correct because: 1) a finding of NCR is not the type of judgment contemplated by CP § 6-220; and 2) Rule 4-345 does not apply to NCR findings.

## *STANDARD OF REVIEW*

Generally, we are unable to review a decision on a motion to modify a sentence under Rule 4-345(e) that is "addressed to the court's discretion." <u>Carter v. State</u>, 193 Md. App. 193, 207 (2010) (citation omitted); <u>see also</u> <u>Hoile v. State</u>, 404 Md. 591, 617 (2008). However, we may review such a decision where, as here, the circuit court ruled as a matter of law that it did not have the ability to consider the motion on its merits. <u>See</u> <u>Fuller v. State</u>, 169 Md. App. 303, 309 n.5 (2006) (quotation omitted), <u>aff'd</u>, 397 Md. 372 (2007). We review the circuit court's legal findings without deference. <u>See, e.g.</u>, <u>Vielot v. State</u>, 225 Md. App. 492, 500 (2015).

---

[3] The State also argues on appeal that even assuming Rule 4-345 could be applied to vacate the NCR finding and replace it with a PBJ, Mr. Schmidt's motion and the circuit court's ultimate ruling were both untimely under Rule 4-345(e)(1). The State did not, however, raise these issues in the circuit court, and we need not address them to resolve this appeal.

6

*THE PBJ STATUTE: WHAT DOES IT STAY?*

To provide the defendant an opportunity to avoid the stigma of a conviction, see In re Iris M., 118 Md. App. 636, 645 (1998), the PBJ statute allows the court to "*stay the entering of judgment*, defer further proceedings, and place the defendant on probation subject to reasonable conditions." CP § 6-220 (emphasis added). Mr. Schmidt contends that the circuit court's determination that the statute cannot apply to NCR findings rested on the court's mistaken premise that a finding of NCR is not a "judgment." Based on our review of the record, we believe Mr. Schmidt has misinterpreted the court's comments.

When the court's explanation is considered in the context of the arguments advanced in the supplemental briefing and at the hearings, it is clear to us that the court was focused not on whether an NCR finding is a final judgment per se, but instead on whether it is "the kind of final [judgment] from which a probation before [judgment] was envisioned by the legislature." The court found it was not, noting that the word "judgment" as used in CP § 6-220 refers to the judgment that occurs upon sentencing.

The court got it right. When a defendant pleads (or is found) guilty, in the ordinary course, he proceeds to sentencing. In fact, until he is sentenced, he is not technically "convicted" of a crime, and there is no final judgment. Jones v. Baltimore City Police Dep't, 326 Md. 480, 488 (1992) ("Although we have held that probation before judgment may constitute a final judgment within the meaning of a statute governing appeals, we have made it clear that probation before judgment is not a final judgment of conviction for most purposes"); Myers v. State, 303 Md. 639, 642-43 (1985) ("[I]n its legal and technical sense[, 'conviction'] means the final judgment and sentence rendered by a court pursuant

7

to a verdict or plea of guilty, and it is frequently used to denote the judgment or sentence."). A defendant may seek a PBJ under CP § 6-220 to *avoid* such a final judgment.

Seen in this light, although Mr. Schmidt is correct that the NCR finding was a "final judgment," it is for that same reason that the PBJ statute does not apply to him. When a defendant pleads NCR, he is affirmatively requesting a final judgment, albeit of a different nature than the one that exists upon sentencing. In contrast, when a defendant asks for a PBJ, he is seeking to stop the proceedings and *prevent* a final judgment—the final judgment of conviction that is entered upon sentencing. See Gleneagles, Inc. v. Hanks, 156 Md. App. 543, 555 n.6 (2004) (citing Black's Law Dictionary 1413 (6th ed. 1990)) (defining a "stay" as a "suspension of the case or some designated proceedings within it" or as "a kind of injunction with which a court freezes its proceedings at a particular point"), aff'd, 385 Md. 492 (2005). The *entry* of judgment on an NCR finding is, therefore, legally and logically incompatible with *staying the entry* of a judgment as contemplated by CP § 6-220.[4]

*RULE 4-345 AND NCR FINDINGS: A SQUARE PEG AND A ROUND HOLE*

The next question is whether there is authority for the court to do what Mr. Schmidt is effectively seeking: to vacate the final judgment that came from the NCR finding, and then stay the entry of a different type of judgment—the judgment that would exist upon

---

[4] Our conclusion is bolstered by the Court of Appeals' opinion in Peterson v. State, __ Md. __, No. 14, Sept. Term 2019 (filed March 31, 2020), in which the Court drew a similar distinction between an NCR finding and parole or probation in holding that a person found NCR is not eligible for post-conviction relief under the Uniform Post-Conviction Procedure Act.

8

the imposition of a sentence.  For that purpose, Mr. Schmidt invoked subsection (e)(1) of Maryland Rule 4-345, which states in relevant part:

> Upon a motion filed within 90 days after imposition of a sentence (A) in the District Court, if an appeal has not been perfected or has been dismissed, and (B) in a circuit court, whether or not an appeal has been filed, the court has revisory power over the sentence except that it may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence.

*Interpreting Rule 4-345*

At oral argument, Mr. Schmidt's counsel requested that we broadly construe the term "sentence" to include any and all "judgments of guilt" for purposes of Rule 4-345. Under this interpretation, subsection (e) would give the court revisory power over any disposition following a finding of guilt.  For the reasons that follow, we decline to read the Rule so broadly.

In construing court rules, we are guided by the same principles used to construe statutes.  See Lisy Corp. v. McCormick & Co., Inc., 445 Md. 213, 221 (2015).  Our objective, then, is to discern and implement the intent of the drafters.  See, e.g., Stoddard v. State, 395 Md. 653, 661 (2006) (quotations omitted).  "We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." SVF Riva Annapolis LLC v. Gilroy, 459 Md. 632, 639-40 (2018) (quotation omitted).  If the statute's language is unambiguous, we need not look any further.  Id.

9

Applying these principles here, we decline Mr. Schmidt's invitation to adopt such a broad interpretation of "sentence." Under Rule 4-345's express terms, the subject of the court's revisory power is limited to a "sentence." See State v. Griswold, 374 Md. 184, 194 (2003). A "sentence," is "the sanction that is being imposed on [a] defendant." Id. (quotation omitted). As a matter of law, a finding of NCR does not result in a sentence or criminal sanction. See Peterson, slip op. at 14-15 (holding that a civil commitment under an NCR finding is not the functional equivalent of "confine[ment] under sentence of imprisonment" for purposes of the Uniform Post-Conviction Procedure Act); State v. Garnett, 384 Md. 466, 474 (2004) (internal quotation omitted) ("In Maryland, a defendant may be found both guilty and not criminally responsible for a crime so that the defendant does not stand convicted of a crime, and no criminal sentence may ever be entered on the guilty verdict"). Therefore, under Rule 4-345's plain language, its reach does not extend to NCR findings.

*Bereska v. State*

Our conclusion is reinforced by our opinion in Bereska v. State, 194 Md. App. 664 (2010). There, the defendant pleaded guilty to third-degree sexual assault. Id. at 668. He was sentenced to a term of incarceration but moved to modify his sentence to a PBJ. Id. The court agreed to hold the motion sub curia pending the successful completion of his sentence and probation. Id. However, unbeknownst to the court and the parties, after Mr. Bereska committed the underlying crime but before he pleaded guilty, the General Assembly changed the law to prohibit a PBJ for third-degree sexual assault. Id. at 671.

10

After Mr. Bereska completed his sentence and probation, he requested a hearing on his previously-filed motion to modify the sentence, again asking for a PBJ. Id. at 671. The State opposed Mr. Bereska's request and, for the first time, argued that the change in the law precluded a PBJ for the crime to which Mr. Bereska had pleaded guilty. Id. Mr. Bereska's counsel conceded the point, and the court "agreed that PBJ was unavailable in cases of third-degree sexual assault." Id. Seeking another pathway to a PBJ, Mr. Bereska and the State agreed that he could withdraw the original guilty plea and enter a new plea to a lesser offense for which a PBJ was available. Id. at 672. In return, Mr. Bereska agreed not to seek an expungement of his record. Id. With the agreement in place, the court held a second plea hearing and 1) approved the parties' plan; 2) allowed Mr. Bereska to withdraw his guilty plea; 3) entered Mr. Bereska's new guilty plea to child abuse; 4) granted Mr. Bereska a PBJ; and 5) entered an order barring Mr. Bereska from seeking an expungement of the crime from his record. Id.

Several years later, Mr. Bereska realized that he may have remained eligible for a PBJ on his original guilty plea after all because, he reasoned, under the ex post facto clauses of the federal Constitution and Maryland Declaration of Rights, the new law would not have applied to him. Id. at 675-76. Based on this theory, Mr. Bereska filed a motion to revise the judgment to permit him to seek an expungement, which the circuit court denied. Id. at 675-77.

On appeal, we never reached the merits of Mr. Bereska's ex post facto argument, but instead resolved the case on jurisdictional grounds. Id. at 689. We observed that at common law, our jurisdiction over a judgment was limited to the term—which normally

11

lasted a year or less—in which the judgment was entered. Id. at 682. We recognized that Rule 4-345 modified the common law jurisdictional limitation by giving the circuit court authority over sentences and judgments beyond the court's term in specific circumstances. Id. at 682, 684. We concluded that "when a court alters an enrolled judgment in a manner not envisioned by the Maryland Rules, the judicial act may not merely be improper, but instead may exceed the jurisdiction of the court." Id. at 684.

We therefore held in Bereska that the circuit court lacked authority under Rule 4-345 "to allow appellant to withdraw his [initial] guilty plea and exchange it for a different plea." Id. at 691. As a result, the agreement endorsed by the circuit court that had resulted in the PBJ and waiver of expungement right was "void for lack of jurisdiction." Id. We therefore remanded the case with instructions to vacate the second plea and reinstate the initial plea and sentence. Id.

Our analysis in Bereska applies with equal force to Mr. Schmidt's motion for modification. As a threshold matter, Bereska teaches us that Rule 4-345 was adopted in derogation of the common law limits on the court's jurisdiction over its judgments. And because rules in derogation of the common law are strictly construed, we would be overstepping our authority to adopt the broad construction urged by Mr. Schmidt. See Walzer v. Osborne, 395 Md. 563, 573-74 (2006).

In addition, the similarities between the facts in this case and those in Bereska compel a similar result. Mr. Schmidt's end-game, as was Mr. Bereska's, is an expungement of the underlying guilty finding from his record. To be eligible for an expungement, both Mr. Bereska and Mr. Schmidt sought a PBJ. To get a PBJ, both Mr.

12

Bereska and Mr. Schmidt first had to find a way to vacate the final judgment initially entered against them, and for that purpose, they both invoked Rule 4-345. And just as Rule 4-345 could not be used in <u>Bereska</u> for that purpose, so too here. As we stated in <u>Bereska</u>, Rule 4-345 "concerns the revisions of sentences solely." 194 Md. App. at 688-89. Accordingly, because a finding of NCR is not a sentence, Rule 4-345 did not give the circuit court the authority to vacate the NCR finding and permit the entry of a PBJ.

*Mr. Schmidt's Policy Arguments*

Mr. Schmidt also contends that, because there are no other possible vehicles for a defendant found NCR to seek a PBJ and thus receive an expungement, Rule 4-345 must apply to NCR findings; otherwise, a defendant like Mr. Schmidt would never be allowed to expunge the guilty plea and NCR finding from his record. This, he argues, would violate the policy considerations underlying NCR findings—namely, that such defendants should be faced with opportunities for recovery rather than punishment. To show that an expungement should be available to him, Mr. Schmidt points to the fact that expungements are available for NCR findings with respect to other underlying crimes. <u>See</u> CP § 10-105(a)(9)-(10) (allowing defendants who have been found NCR for certain enumerated minor infractions to petition for expungement).

This argument cuts *against* Mr. Schmidt's position. The General Assembly's decision to allow expungements in certain contexts, but not others, must be credited as intentional, and if it had wanted to allow the expungement of records for all NCR defendants, it could have done so. <u>See</u> <u>In re Ryan S.</u>, 369 Md. 26, 56 (2002) (quotation

13

omitted) ("where the Legislature in a statute expressly authorizes a particular action under certain circumstances, the statute ordinarily should be construed as not allowing the action under other circumstances"). Accordingly, even if we agreed with Mr. Schmidt, we may not substitute our own policy preferences for those of the General Assembly.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT**.

14